## ATTACHMENT TO AFFIDAVIT FOR SEARCH WARRANT

I, John W. Forte, state as follows:

## INTRODUCTION

1.        I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and

Explosives (ATF), United States Department of Justice, and have been so employed since 2002.

I am currently assigned to the ATF Boston Field Division, Manchester, New Hampshire Field

Office, and charged with investigating criminal offenses involving the federal firearms,

explosives, arson, alcohol, and tobacco diversion laws.

2.        I have received extensive training in the federal firearms laws and am familiar

with ATF's regulations regarding the purchase and sales of firearms.  I have successfully

completed the Criminal Investigations Training Program and the ATF New Professional

Training (NPT) at the Federal Law Enforcement Training Center in Glynco, GA.  During the

NPT program, I learned how to investigate criminal offenses involving the federal firearms,

explosives, arson, alcohol, and tobacco diversion laws.  I have received advanced training with

regard to conducting complex firearms trafficking investigations.  I have participated in dozens

of investigations relating to the illegal acquisition and sales of firearms, the illegal manufacture

and possession of National Firearms Act weapons and previously have sworn out numerous

affidavits in support of search warrants and arrest warrants in firearms cases.  I have been

certified as an Interstate Nexus Expert, that is, an expert in establishing whether particular

firearms or ammunition have traveled in interstate commerce thereby satisfying the interstate

commerce element of many federal firearms crimes.

3.        I make this affidavit in support of an application under Rule 41 of the Federal

Rules of Criminal Procedure for a warrant to **search the residence of Corey DONOVAN**

located at **33 Route 4A (New Hampshire Turnpike, Wilmot, New Hampshire** (further

described in Attachment A) for the items described in Attachment B.

4.      The information contained in this affidavit is based on my personal involvement

in this investigation, my training and experience, my review of documents, and information

provided to me by other law enforcement officers.  Since this affidavit is being submitted for the

limited purpose of securing a search warrant, I have not included each and every fact known to

me concerning this investigation.   I have set forth only the facts that I believe are necessary to

establish probable cause for the requested warrant.

## LEGAL BACKGROUND

5.      Title 18, United States Code, Section 922(g)(1), in relevant part:

It shall be unlawful for any person–

(3) who has been convicted in any court of, a crime punishable by imprisonment
for a term exceeding one year…;

(9) …to ship or transport in interstate or foreign commerce, any firearm or
ammunition; or to receive any firearm or ammunition which has been shipped or
transported in interstate or foreign commerce.

6.      Title 26, United States Code, Section 5845 states, the definitions in relevant part:

For the purpose of this chapter –

(a) **Firearm.** The Term **"firearm"** means…(6) a machinegun

(b) **Machinegun.** The term **"machinegun"** means any weapon which shoots, is
designed to shoot, or can be readily restored to shoot, automatically more than
one shot, without manual reloading, by a single function of the trigger. The
term shall also include the frame or receiver of any such weapon, any part
designed and intended solely and exclusively, or combination of parts
designed and intended, for use in converting a weapon into a machinegun, and

2

any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

7.    Title 26, United States Code, Section 5861 states, in relevant part:

It shall be unlawful –

(d) to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record; or

(f) to make a firearm in violation of the provisions of this chapter;

8.    Title 21, United States Code, Section 841(A)(1) states, in relevant part:

**(a) Unlawful acts**
Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; or
(2) to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance.

9.    And Title 21 United States Code, Section 846, Attempt and conspiracy:

Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

## FACTS ESTABLISHING PROBABLE CAUSE

10.    On July 3, 2001, Corey DONOVAN plead guilty to two felony counts of Burglary in the Belknap Superior Court and was sentenced to two to four years incarceration with some time suspended.

11.    On March 10, 2009, DONOVAN was sentenced to one hundred fifty-four months incarceration and five years of supervised release for DONOVAN's felony convictions in the United States District Court of New Hampshire. DONOVAN was convicted on Conspiracy to Commit Bank Robbery, Bank Robbery, and Possession of a Firearm in furtherance of a Crime of

3

Violence. DONOVAN and his accomplices used snowmobiles as their getaway vehicles during the bank robbery.

12.     On June 19, 2019, DONOVAN was reported passed out at the wheel of his vehicle in the parking lot of an Irving gas station in Andover, NH. Members of the Andover, Danbury and Hill Police Departments responded to the call. DONOVAN was found in possession of methamphetamine and a subsequent state search warrant of the vehicle was conducted. A locked large plastic gun case was located inside the vehicle and a separate state search warrant was obtained to gain access to the large plastic gun case. The large plastic firearms case contained a rifle, a revolver, a suspected silencer made from a $CO_2$ Canister, a shotgun, and assorted ammunition. DONOVAN was charged in Merrimack County Superior court on the possession of Methamphetamine and Felon in Possession of a Firearm. DONOVAN was indicted in the United States District Court for New Hampshire for Felon in Possession of a Firearm. In a subsequent trial at the Merrimack Superior Court, DONOVAN was acquitted of the Felon in Possession of a Dangerous Weapon charge, but found guilty of the possession of the methamphetamine. Due to the acquittal in state court on the Felon in Possession of a Dangerous Weapon charge, DONOVAN's federal charge was dismissed.

13.     On March 11, 2021, this affiant received information regarding Corey DONOVAN being in possession of firearms in violation of federal law and his current term of supervised release with Federal Probation and Pretrial Services.

14.     The property referred to as 33 Route 4A (NH Turnpike) in Wilmot is an eight acre property that is listed as parcel 6-2 on the map 10 of the Town of Wilmot tax maps. The property is listed as being owned by Vivian Hodgdon and Shanah Hodgdon. According to information obtained through the 911 database, the main house of the property has been listed as

4

33 NH Route 4A, the garage/apartment is listed as 31 NH Route 4A, and the third structure at the rear of the property is listed as 29 NH Route 4A. Although individually designated for 911 purposes, numbers 29, 31, and 33 are all collectively considered the property at 33 NH Route 4A.

15.     This affiant reviewed two property tax cards for the parcel from the Town of Wilmot, showed that property card one listed the address of 33 NH Route 4A and it listed the owners as Vivian Hodgdon and Shanah Hodgdon. Property card one showed a picture of the house (#33), listed the house's approximate square footage as fifteen hundred square feet, along with two sheds. Property card one further listed a notation of "GAR COMM METAL TYPE", which this affiant interpreted to mean a garage of the commercial metal type. Property card one also listed in the "Features" section a "GARAGE-1 STY" with a footprint of 35' by 54' and a notation of "HEA/OUT BACK"(#29). The "Features" section of Property card one also listed a "LEAN-TO" with a notation of "ATT GAR".

16.     A review of property tax card two for the same parcel listed the address of 31 NH Route 4A and it listed the owners as Vivian Hodgdon and Shanah Hodgdon. Property card two showed a picture of the garage/apartment, listed the garage/apartment's approximate square footage as thirteen hundred square feet, and noted that the garage/apartment had two bedrooms and one bathroom.

17.     On March 11, 2021, this affiant and Somersworth, NH Police Detective Anthony DeFrancesco interviewed a Source of Information (hereafter referred to as SOI). The SOI has been previously interviewed regarding an unrelated case and was found to have provided truthful and accurate information. At the time of the March 11, 2021, interview, SOI was in police custody for both state and federal warrants. I know SOI to have a criminal record, including a

5

felony conviction for theft by unauthorized taking, in addition to a history of abuse of controlled substances. He/she did not appear to be under the influence of any substances during our meeting. SOI was advised of his/her Miranda Rights which he/she waived and agreed to speak to investigators. SOI advised that beginning approximately on March 7, 2021, and continuing until March 9, 2021, he/she and his/her associate (hereafter referred to as Associate-1) visited with Corey DONOVAN at his residence located in Wilmot, NH.

18.     SOI stated that Associate-1 and DONOVAN communicated via Facebook Messenger and that those messages should be visible on SOI's cell phone. SOI explained that both SOI and Associate-1's Facebook profiles/passwords were stored in SOI's cell phone. SOI stated that Associate-1 had his/her own cell phone.

19.     SOI stated that Associate-1 and DONOVAN began to arrange for DONOVAN to pick them up from their current residence in Tilton on the night of March 7, 2021. SOI stated that DONOVAN picked them up either late on March 7, or early in the morning on March 8, 2021. SOI stated that DONOVAN drove a "Mazda Matrix". SOI stated that when DONOVAN arrived to pick them up, he had two dead deer strapped to the roof of the vehicle. DONOVAN told them that he had come across an accident in Tilton, NH on his way to pick them up that involved at least one vehicle and the two deer. DONOVAN told them that the Tilton, NH Police allowed him to take the two deer carcasses. SOI stated that DONOVAN's vehicle had a large amount of blood on it from the deer carcasses.

20.     SOI stated that DONOVAN drove them to his residence in Wilmot, NH. It should be noted that through investigation, this affiant learned DONOVAN resided at 33 Route 4A (NH Turnpike) in Wilmot, NH. SOI described the property as having a house near the road that was occupied by DONOVAN's mother. This affiant believes this refers to #33. SOI stated

6

that they never entered the mother's house.  SOI stated that there was a garage near the road as
well that DONOVAN had converted to an apartment and lived in.  This affiant believes this to
refer to #31.

21.     SOI stated that there was also a large building that he/she estimated to be
approximately forty feet by sixty feet which was located a distance behind the mother's house
and DONOVAN's apartment/garage, but was visible from Route 4A (NH Turnpike).  This
affiant believes this refers to #29.  SOI said this third building had multiple entrances including a
man-door, two barn doors and two roll-up garage doors.  SOI stated that there were horses kept
in an area behind the third building.  SOI stated that while they were at DONOVAN's, they spent
the majority of the time in the third building.

22.     SOI stated that DONOVAN strung up both of the deer carcasses inside the third
building and that SOI took pictures of the deer carcasses with SOI's cell phone.  SOI stated that
his/her geolocation was turned on at the time he/she took the photographs.

23.     SOI stated that DONOVAN made a comment that all the buildings on the
property each had a separate address.  DONOVAN further commented that it was his belief the
separate addresses did not allow for law enforcement (Federal Probation and Pretrial Services) to
search the other structures during home visits.

24.     SOI stated that DONOVAN had firearms in the third building in plain view
including a hunting rifle with camouflage, a two-tone pistol, a silver colored revolver, and a
suspected large machinegun in a black case that was required to be mounted on a tripod.  SOI
stated that he/she did not see the suspected machinegun himself/herself, but saw the other three
firearms personally.  SOI indicated that Associate-1 saw the machinegun and was visibly
shocked by the presence of the suspected machinegun and that Associate-1 believed that the

7

firearm was a machinegun. SOI stated that no one shot any of the firearms during the extent of their visit.

25.    SOI stated that they never went to sleep during the night and early morning of March 7/8, 2021. SOI stated that DONOVAN's cohabitating girlfriend is Kelley FINNIGAN. SOI stated that on March 9, 2021, SOI, Associate-1, DONOVAN, and FINNIGAN, visited the Sugar River Animal Hospital located at 120 Route 10 South, Unit 19, Grantham, NH. The purpose of the visit was for DONOVAN and FINNIGAN to bring their six month old puppy for treatment. SOI stated that while they were at the Sugar River Animal Hospital, the Grantham, NH Police Department were called because of all the blood on DONOVAN's vehicle and DONOVAN spoke with the responding officer. SOI stated that DONOVAN had the tripod for the suspected machinegun in his vehicle. SOI stated that during the interaction with Grantham, NH Police Department, DONOVAN emptied out the cargo area of the vehicle. DONOVAN removed the tripod from the cargo area of the vehicle and had a conversation with Associate-1 and SOI in which he indicated that the tripod was for use with the suspected machinegun that SOI knew was located in the third building on DONOVAN's property.

26.    SOI stated that DONOVAN is a methamphetamine user and appeared to be using heavily by his paranoid attitude. SOI stated that he/she believed DONOVAN was in a state of "psychosis" due to the excessive amount of methamphetamine use. SOI stated that he/she felt as though DONOVAN wanted SOI and Associate-1 to live at DONOVAN's residence with him and FINNIGAN. SOI stated he/she felt as if they had been "kidnapped" because DONOVAN made it difficult for them to leave his residence and return to Tilton. SOI stated that he/she believed that DONOVAN was prohibited from the possession of firearms, but had no specific knowledge regarding the reason for his prohibition.

27.    SOI stated that he/she attempted to use the Uber app to obtain a ride for SOI and Associate-1 back to Tilton, NH.  SOI stated that during his/her attempt to use the Uber app, SOI initially stated the street address was "24 4th Turnpike".  SOI then corrected himself/herself and stated the address was "24th NH Turnpike". This affiant entered the address of 24 NH Turnpike, Wilmot, NH into the Apple map app on his government issued iPhone and the app showed an area near Route 4A (NH Turnpike) in Wilmot, NH.  This affiant showed his iPhone to SOI who pointed out the house (#33), DONOVAN's garage/apartment building (#31), and the third building at the rear of the property (#29).  This affiant took the following two screen shots of the buildings SOI indicated;



28.     SOI stated that he/she felt as though DONOVAN did not want them to leave and

SOI subsequently called a friend (hereafter referred to as Associate-2) to come pick SOI and

Associate-1 up.  SOI stated that he/she provided Associate-2 with the address of where to pick

SOI and Associate-1 up.  SOI stated that Associate-2 picked them up around 11-11:30PM on

March 9, 2021.  SOI stated that when Associate-2 arrived to pick them up, DONOVAN became

nervous and threw Associate-1 into the snowbank when Associate-2 pulled in and DONOVAN

10

yelled "get down soldier!" It should be noted that this affiant has no information that DONOVAN served in the military.

29.     SOI stated that one of DONOVAN's sisters, D.M., stopped by the residence to purchase drugs from DONOVAN. SOI said DONOVAN went up to the bedroom on the second floor of the garage he converted to an apartment to retrieve the drugs he sold to D.M.

30.     SOI stated that DONOVAN did not show them any explosives, but that he did show them a box in his room located on the second floor of the garage/apartment (#31) that contained a blue colored rope that DONOVAN described as a type of pyrotechnic fuse.

31.     SOI stated that at one point when they were in DONOVAN's vehicle, they passed a store that began with a "B" and DONOVAN stated that he wanted to burglarize the store. SOI further described the store as a "Tractor Supply like store". SOI stated that the store was located at the beginning of DONOVAN's road. SOI stated that DONOVAN attempted to get Associate-1 to commit the burglary with him. SOI stated that DONOVAN had a plan on how to commit the burglary which included using snowmobiles and a boat to help him get the stolen merchandise away from the store via a dirt road located behind the store. A Google search of stores in Wilmot, NH indicated that Belletetes of Andover, a home improvement store, was located at 24 10 Penny Lane in Andover, NH. According to Google Earth directions, the Belletetes store is approximately 2.1 driving miles from DONOVAN's residence. It should be noted that the Belletetes store is located at the junction of Route 4A (NH Turnpike) and Route 11.

32.     Also on March 11, 2021, Somersworth, NH Police Det. Sgt. John Sunderland asked SOI if he/she would consent to the search of his/her Samsung cell phone. SOI agreed and

signed a SPD consent to search form.  SOI voluntarily provided his/her passcode to Det. Sgt. Sunderland.

33.      On March 12, 2021, this affiant obtained an updated criminal history and noted that DONOVAN was on supervised release with Federal Probation and Pretrial Services Officer Timothy Merna until June 17, 2024.  This affiant also noted that DONOVAN had a 2006 misdemeanor conviction for False Imprisonment in Laconia District Court in Laconia, NH.  In addition, this affiant obtained DONOVAN's New Hampshire vehicle registrations that only listed a green 1987 Jeep Wrangler bearing registration 4571990.  This affiant noted that on both DONOVAN's driver's license record and motor vehicle registration, DONOVAN's address is listed as 17 Granite Street in Wilmot, NH.

34.      Beginning on March 12, 2021, and continuing until March 19, 2021, Det. DeFrancesco and this affiant spoke with Federal Probation and Pretrial Services Officer Timothy Merna.  Officer Merna confirmed DONOVAN was on supervised release and that he supervised DONOVAN.  Officer Merna advised that DONOVAN's cohabitating girlfriend is Kelley FINNIGAN (DOB 9/24/1998).  Officer Merna stated that when DONOVAN was initially placed on supervised release, DONOVAN gave him a tour of the property located at 33 Route 4A (NH Turnpike) in Wilmot, NH.  Officer Merna advised that based on the search parameters of DONOVAN's supervised release, Officer Merna was able to search all the buildings on the property (#29, #31, and #33).  Officer Merna stated that DONOVAN's only known employment was for the neighbor which involved working with horses.

35.      Officer Merna confirmed that DONOVAN resided at 33 Route 4A (NH Turnpike) in Wilmot, NH.  Officer Merna stated that he is familiar with the property.  Officer Merna stated that DONOVAN lived in the garage that was converted to an apartment which was located near

Route 4A (NH Turnpike)(#31), confirming the previous information from SOI. Officer Merna described it as a two story building with DONOVAN's room on the second floor. Officer Merna stated that at the rear of the property there is a large metal fabricated building (#29). Officer Merna stated that the building was large enough to house approximately two full-sized semi-trailers. Officer Merna confirmed that horses were kept near that building. Officer Merna stated that he and DONOVAN walked him through the building when DONOVAN was initially placed on supervised release and Officer Merna was shown the property. Officer Merna stated that there is a fourth structure that is near the third building, but is older. Officer Merna stated that at the time of his initial tour of the property with DONOVAN, ducks were being kept in the fourth building.

36.     Officer Merna stated that DONOVAN's biological mother, Vivian HODGDON and his sister Shanah HODGDON, resided in the house which was located next to the converted garage and near Route 4A (NH Turnpike)(#33). Officer Merna stated that DONOVAN has access to his mother's house.

37.     Officer Merna stated that he has noted on multiple occasions that DONOVAN has numerous edged weapons, including novelty knives and survival knives, at the residence, but has not seen any indication of firearms.

38.     Officer Merna stated that he was contacted by both the Tilton and Grantham Police Departments regarding their contact with DONOVAN during the week of March 7, 2021 involving the two dead deer DONOVAN took possession of and transported on his vehicle. Officer Merna stated that DONOVAN also contacted him to advise of his contacts with the Tilton and Grantham, NH Police Departments.

13

39.    This affiant advised Officer Merna that he had obtained information that DONOVAN was in possession of multiple firearms, including a purported machinegun.

40.    Officer Merna also provided this affiant with copies of DONOVAN's Firearm & Dangerous Weapons Prohibition form and his Post-Conviction Travel Restrictions.  This affiant noted that both forms were signed by DONOVAN and dated June 22, 2020.  In addition, this affiant noted the following paragraph of the Firearm & Dangerous Weapons Prohibition form;

> "Finally, federal case law has ruled that possession of a firearm, ammunition, or a dangerous weapon may be actual or constructive. Actual possession means that a person has immediate, hands-on physical possession of the item(s) in question. Constructive possession is present when a person knowingly has the power at a particular time to exercise dominion and control over an object. Dominion and control over an object frequently may be found through inference, based on a showing of dominion and control over the area in which the object is found. Constructive possession may be found based wholly on circumstantial evidence. For example, if you were house-sitting for a friend whom you knew had firearms in the home, and you had the ability to access those them, then you could constructively possess those weapons."

41.    Officer Merna stated that DONOVAN failed a urine based drug test and admitted to the use of methamphetamine on January 21, 2021 during a home visit.  Officer Merna saw DONOVAN again, in-person, at DONOVAN's residence on January 28, 2021.  Officer Merna stated that he contacted DONOVAN and arranged to meet with him on February 11, 2021. Officer Merna stated that when he arrived at DONOVAN's residence (#31) on February 11, 2021 for his pre-arranged meeting with DONOVAN, he could not locate DONOVAN or reach him by phone.   Officer Merna stated that he went out to the third building at the rear of the property in search of DONOVAN.  Officer Merna stated that he opened the door to the third building (#29) and called out for DONOVAN, but received no response.  Officer Merna stated he did not enter the building, but noted that it was reasonably cluttered with equipment and tools.

14

42.    Officer Merna stated that DONOVAN also failed a drug test for use of methamphetamine during his first supervised release in 2019.

43.    On March 16, 2021, I reviewed the Grantham, NH Police Department incident reports and the dispatch notes for their contact with DONOVAN on March 9, 2021 at approximately 12:30PM, at the Sawyer Brook Plaza on 120 Route 10 South in Grantham, NH. Captain Gordon Cunningham and Sergeant James MacKenna responded to the call and made contact with DONOVAN. I noted that on the dispatch notes that DONOVAN's vehicle was a blue 2005 Toyota Matrix bearing New Hampshire registration 4431537. The reporting party had indicated that the vehicle had it's doors open with items scattered on the ground and there was a large amount of blood on the vehicle. I noted that DONOVAN's address on the incident report was listed as 31 Route 4A in Wilmot, NH. I noted the incident reports indicated that Sgt. MacKenna had activated his body camera for the contact with DONOVAN. Capt. Cunningham and Sgt. MacKenna spoke with DONOVAN who explained that the blood and deer fur on the vehicle were from transporting the deer from the accident in Tilton, NH. I noted that Capt. Cunningham wrote in his report that DONOVAN "appeared energetic and could not stand still." During the contact, DONOVAN's criminal history was queried and his federal probation status was acquired. DONOVAN confirmed he was on federal probation and was subsequently allowed to leave. Capt. Cunningham later confirmed DONOVAN's statements with Tilton PD and notified Officer Merna of the contact with DONOVAN.

44.    On March 15, 2021, ATF Special Agent Mattheu Kelsch performed a forensic download of SOI's cellular phone based on his/her consent. S/A Kelsch advised that he located an image of two deer carcasses hanging in what appeared to be a possible metal fabricated building which was taken on March 9, 2021 at approximately 8:22PM. S/A Kelsch advised there

15

was no location data embedded in the photograph.  S/A Kelsch sent the photograph to this affiant
and it is included here:



45.     On March 16, 2021, S/A Kelsch notified the affiant that upon further examination
of SOI's cellular phone information, he had found a GPS location hit associated with the Uber
app on March 9, 2021 at approximately 8:41PM which placed the phone at GPS coordinates
43.442899, -71.893261.  S/A Kelsch advised that when he input the GPS coordinates in Google
Maps it placed a marker on a building in Wilmot, NH.  S/A Kelsch sent the Google Maps GPS
coordinates search results to this affiant who confirmed the building that the marker is indicated

is the third building at the rear of the property at 33 Route 4A (NH Turnpike)(#29) in Wilmot, NH. This affiant noted that Google Maps labeled Route 4A as "4th New Hampshire Turnpike".

46.     S/A Kelsch further advised that he located a Facebook Messenger conversation consisting of seven messages between SOI and an associate (hereafter referred to as Associate-3) which occurred on March 9, 2021, between approximately 8:43PM and 8:55PM. In the conversation SOI stated that he/she was at DONOVAN's house.

47.     S/A Kelsch also located a Facebook Messenger conversation consisting of thirteen messages between SOI and Associate-2 which occurred on March 9, 2021, between approximately 10:18PM and 11:43PM. In the conversation SOI asked Associate-2 to pick him/her and Associate-1 up from "25 Fourth new Hampshire turnpike,wilmot nh". Associate-2 agreed to provide them a ride and at approximately 11:43PM sent the message "Here".

48.     On March 18, 2021, this affiant reviewed body camera footage from DONOVAN's contact with Captain Cunningham and Sgt. Mackenna of the Grantham, NH Police Department on March 9, 2021. DONOVAN told the officers that the Toyota Matrix was the property of his cousin Lynda and that he was in the process of purchasing the vehicle from her. DONOVAN told the officers that he resided at "31 NH Route 4A" in Wilmot, NH. DONOVAN stated that the deer carcasses were currently hanging in his garage. This affiant noted that there are three other individuals seated inside the Toyota Matrix, but it they could not be identified due to the poor lighting conditions in the vehicle and the deer blood on the windows. DONOVAN told the officers that he worked for a friend helping with horses.

49.     On March 21, 2021, your affiant queried the National Firearm Registration and Transfer Record (NFRTR) for the name Corey DONOVAN with the state of residence being New Hampshire. No registrations were located for that name and state in the NFRTR.

17

50.     I know from my experience as an ATF Agent, and in particular from my participation with other agents in the execution of numerous search warrants authorizing the seizure of firearms, that those who own and possess firearms generally maintain possession of them for several years.  Persons who own firearms generally keep them on their persons, in their residences and motor vehicles, or in places where they store their personal property.  The reasons owners of firearms generally maintain and preserve them for several years include the facts that firearms are somewhat expensive, there is an administrative delay in buying them (particularly true when a mail service is used), and firearms do not easily wear out.  In my experience, firearms are not depleted through use, nor are they often exchanged for another firearm immediately after being obtained.  Firearms are like expensive tools, which their owners keep and maintain over several years.  The reasons owners of firearms generally maintain firearms in and about their home or vehicles include the facts that maintenance of them in and about the home or vehicles permits easy access to the firearms, and firearms must be maintained in an environment where they will be secure from theft, as well as safe from rust and corrosion.  In the residence, in the vehicle, and on the person, the firearm is readily available in the event the need for its use arises.

51.     I also know through my experience that most individuals who purchase firearms retain certain documents relating to those purchases, such as sales receipts, factory warranties, and canceled checks, among their personal papers in their residence or where they store their personal property.  I also know through my experience that almost without exception individuals who possess firearms also possess related items such as gun cases, ammunition, gun cleaning supplies and equipment, related to the care and maintenance of the firearms.

52.     I also know through my training and experience that illegally converted or

18

possessed firearms are often secreted in a residence in an attempt to keep other individuals or law enforcement from the discovery of illegally obtained weapons. It also know through my training and experience that individuals often secret those illegally obtained firearms in common areas of a residence or apartment buildings such as laundry rooms, living rooms, kitchens and/or outbuildings.

53.     While it is impossible to know the exact identity of the firearms observed by SOI if and until they are seized and examined, in this affiant's experience as an Interstate Nexus Expert for ATF, I am aware that the majority of the firearms recovered in the State of New Hampshire, have travelled in, or affected interstate or foreign commerce.

54.     This affiant has personally been involved with numerous drug-related criminal investigations resulting in the seizure of illicit narcotic drugs and the arrest of narcotics offenders. Through my training, education and experience as a Special Agent, I have become familiar with the manner in which illicit narcotic users and dealers conduct illegal activities. I am knowledgeable of the various ways these individuals purchase, manufacture, distribute, secrete and conceal. Furthermore, I am aware of the techniques utilized by these individuals to be discreet and overt in their behaviors in an attempt to avoid detection by law enforcement. I have observed and learned the different methods used to package narcotics, as well as the way users consume drugs and the effect of those drugs.

**CONCLUSION**

I submit that this affidavit supports probable cause for a warrant to search the three

specific locations on the property commonly known as 33 Route 4A (NH Turnpike) in Wilmot,

New Hampshire, as described in Attachment A, and authorize the seizure of items described in

Attachment B.

Respectfully Submitted,

/s/ John Forte
Special Agent John Forte
Bureau of Alcohol, Tobacco, Forearms and
Explosives

The affiant appeared before me by telephonic conference on this date pursuant to Fed. R.
Crim. P. 4.1 and affirmed under oath the content of this affidavit and application.

Date: __Mar 24, 2021__
Time: __10:06 AM, Mar 24, 2021__

HONORABLE ANDREA K. JOHNSTONE
UNITED STATES MAGISTRATE JUDGE

## **ATTACHMENT A**

There are three locations to be searched at the subject property commonly known as 33 Route 4A in Wilmot, NH.

### Location 1: The "Second" Building

The first location to be seized and searched is the garage/apartment on the property of 33 Route 4A (NH Turnpike) in Wilmot, NH and is referred to as 31 NH Route 4A on the second property tax card for corresponding parcel on the Town Wilmot tax maps. The number "33" is clearly visible on a reflective sign mounted to a tree located where the only paved driveway to the property meets Route 4A (NH Turnpike). The garage/apartment is described as a two-story, wood framed structure, with a single garage door facing Route 4A. The structure is painted green with red trim and has at least one additional entrance/exit on the driveway side of the building.

### Location 2: The "Third" Building

The second location to be seized and searched is the third building listed in the above affidavit at the rear of the property 33 Route 4A (NH Turnpike) in Wilmot, NH, which is described as a large commercial metal garage/workshop with a lean-to or carport on the rear of the building where horses are stabled (#29). The structure appears to be light grey in color with white trim. The third building has multiple entrances including, but not limited to, man doors and garage doors on at least three sides of the building.

<u>Location 3: The Blue Toyota Matrix</u>

Finally, the third location to be searched is the blue 2005 Blue Toyota Matrix bearing

New Hampshire registration 4431537 (VIN 2T1LR32E65C489658).



**Garage/Apartment at 33 Route 4A in Wilmot, NH (also referred to as 31 NH**

**Route 4A)**

2





**Third Building located at 33 Route 4A in Wilmot, NH (also referred to as 29**

**NH Route 4A)**





4

## **ATTACHMENT B**

The following is a list of the evidence, fruits and instrumentalities of the violations of Title 18 USC 922 (g)(1):

1.    Firearms; ammunition; and other evidence pertaining to the possession of firearms or ammunition, including gun cases, ammunition magazines, holsters, spare parts for firearms, firearms cleaning equipment and accessories; photographs of firearms or persons in possession of firearms; records and receipts indicating the purchase, repair, receipt, sale or possession of firearms, ammunition, and firearms equipment; canceled checks and other financial records evidencing the purchase, receipt, sale or possession of firearms; receipts or documents indicating other storage locations; information regarding firearms transactions on computer printouts, cassette, disk or diskette; documents indicating felony conviction; receipts or documents indicating other storage locations; pagers, cellular telephones or other data recording devices located on the property, photographs, letters, documents that establish the persons who have control over property and vehicles searched and from which evidence is seized, such as: personal mail, telephone records, checkbooks, personal identification, notes, other correspondence, utility bills, rent receipts, keys, and vehicle registration information.

The following is a list of the evidence, fruits, and instrumentalities of violations of Title 26 U.S.C. Section 5861 (d) and (f) to be seized:

2.    Complete and partially complete firearms that qualify as firearms under the National Firearms Act.

5

3.   Any and all firearms accessories which if added to a firearm may qualify it as a firearm under the National Firearm Act; including, but not limited to, shoulder stocks (including collapsible, removable, and folding shoulder stocks), vertical foregrips, firearm barrels, and wrist braces that are used to assist shooters to function certain pistols.

4.   Packaging or containers for firearms, ammunition, firearms accessories which if added to a firearm may qualify it as a firearm under the National Firearm Act; including, but not limited to, shoulder stocks (including collapsible, removable, and folding shoulder stocks), vertical foregrips, firearm barrels, and wrist braces that are used to assist shooters to function certain pistols.  Products or accessories that could be used to convert firearms to qualify as firearms under the National Firearms Act.

5.   Documentation related to the importation, manufacture, purchase, possession, sale or use of explosives and their precursors, explosive devices or destructive devices (including components of such devices) including but not limited to pricing sheets, sales receipts, bills of lading, price tags, ledgers or logs. Currency in the form of cash, check, money order, or other real and tangible proceeds or assets from the sale or intended purchase of explosive materials or destructive devices.

6.   Manuals or other literature relating to the assembly, manufacture and/or :function of explosives, explosives devices or destructive devices including but not limited to: books, pamphlets, drawings, sketches, diagrams, photographs, computer prints or photocopies. Paper in handwritten form, typed, photocopied or printed or stored on computers, cellular or other Wi-Fi enabled devices, thumb or flash drives, magnetic tape, cassette, disk, diskette, photo-optical devices, faxes, photographic film or any other medium.

6

7.  Indicia of residency to include but not limited to vehicle, motorcycle, boat or trailer registration, utility bills, cable bills, bank or credit card statements, personal mail, checkbooks, personal identification, notes, other- correspondence, utility bills, rent receipts, payment receipts, financial documents, keys, photographs (developed or undeveloped), leases, mortgage bills, receipts for vehicle parts and repairs and telephone answering machine introductions and fingerprints.

8.  Any photographs and videos of firearms of Corey DONOVAN in possession of firearms.

9.  Documents relating to the acquisition, purchase, sale, and/or repair of the aforementioned items, including but not limited to: receipts and documents reflecting the dates of these transactions, the items acquired, and the names, mailing addresses, email addresses, and/or telephone numbers of individuals associated with these activities.

The following is a list of the evidence, fruits and instrumentalities of the violations of Title 21 U.S.C. Section 841(A)(1)(a) and 846:

10. Any controlled substances, including methamphetamine, crack cocaine, heroin, and any paraphernalia or other items relating to, or assisting in, the use, distribution or trafficking of controlled substances.

11. Any and all documents, records, electronic data, and articles of personal property relating to the purchase, possession, or distribution of controlled substances, including: cellular and smart phones, ledgers, account books, receipts, log books, telephone directories, notes, maps, receipts, correspondence, customer lists and records, suppliers' lists and records, delivery forms and records, bank and financial records including checks, money orders, mailing receipts, car and mailbox rental records, storage facility rental records, logs and

7

journals, and records relating to domestic travel such as receipts, tickets, passports, visas, and travel schedules.

12. Any and all documents, records, electronic data, and articles of personal property evidencing the obtaining, secreting, transfer, expenditure, and concealment of money and assets derived from or to be used in the purchase, possession, or distribution of controlled substances, including: currency, jewelry, bank books, bank statements, receipts, warranties, electronics, financial and negotiable instruments, checks, and money orders, records of wire transfers, tax records, property acquisition records, cellular and smart phones, ledgers, account books, receipts, log books, telephone directories, notes, maps, receipts, correspondence, customer lists and records, suppliers' lists and records, delivery forms and records, bank and financial records including checks, money orders, mailing receipts, car and mailbox rental records, storage facility rental records, logs and journals, and records relating to domestic travel such as receipts, tickets, passports, visas, and travel schedules.

13. Any and all documents, records and articles of personal property showing the identity of persons occupying, possessing, residing in, owning, frequenting, or controlling the subject premises, including: keys, rental agreements and records, deeds, mortgages, property acquisition records, utility and telephone bills and receipts, photographs, telephone beepers or paging devices, and storage records.